**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Alfred Flowers,

          Plaintiff,

      v.

City of Minneapolis, Minnesota,
Kevin Stoll, in his individual and
official capacities, Sherry Appledorn,
in her individual and official capacities,
Erika Christensen, in her individual and
official capacities, and John Does 1-5,

          Defendants.

**ORDER**
Civil No. 04-3959 ADM/AJB

_____

Jill Clark, Esq., Jill Clark, P.A., Minneapolis, MN, appeared for and on behalf of Plaintiff Alfred
Flowers.

James A. Moore, Esq., Assistant City Attorney, Minneapolis, MN, appeared for and on behalf of
Defendants City of Minneapolis, Sherry Appledorn, and Erika Christensen.

Karin E. Peterson, Esq., Rice, Michels & Walther LLP, Minneapolis, MN, appeared for and on
behalf of Defendant Kevin Stoll.

_____

## I. INTRODUCTION

On December 7, 2005, oral argument before the undersigned United States District Judge

was heard on Defendants' Motions for Summary Judgment. Defendants City of Minneapolis

("Minneapolis"), Sherry Appledorn ("Appledorn"), and Erika Christensen ("Christensen")

jointly filed a Motion for Summary Judgment [Docket No. 52]. Defendant Kevin Stoll ("Stoll")

filed a separate Motion [Docket No. 45]. In his Second Amended Complaint ("Complaint")

[Docket No. 38], Plaintiff Alfred Flowers ("Flowers") alleges violations of 42 U.S.C. §§ 1981

and 1983, defamation, and negligent infliction of emotional distress.[1]  For the reasons set forth

herein, Defendants' Motions are granted in part and denied in part.

## II. BACKGROUND

Alfred Flowers is an African American citizen of Minneapolis.  Flowers Aff. [Docket

No. 87] ¶ 1.  Flowers, an activist for African American rights, attended a meeting of the Urban

League in Minneapolis in September 27, 2003.  Following the meeting, an altercation involving

Flowers and Minneapolis police officers, resulted in Flowers' arrest for disorderly conduct and

resisting arrest.  A trial of these charges in September 2004 resulted in a verdict finding Flowers

not guilty.

Defendant Kevin Stoll has been a Minneapolis Police officer since 1987.  Stoll Dep.

(Peterson Aff. [Docket No. 51] Ex. A) at 10.  Stoll has attained the rank of lieutenant.  Id. at 26.

In 2003, after he was assigned to the First Precinct, Stoll accessed a Computer Assisted Police

Record System ("CAPRS") report on the September 27, 2003 arrest of Flowers.  Id. at 151-52.

Stoll claims he accessed the report to determine which Minneapolis Park Police officers were

involved in the incident.  Id.

Stoll lives on the 5800 block of Knox Avenue South in Minneapolis.  Id. at 79.  In the

summer of 2003, Flowers began renting a house on the same block.  Flowers Aff. ¶ 1; Flowers

Dep. (Peterson Aff. Ex. C) at 8.  Neither Stoll or Flowers were aware of the other's identity until

---

[1] In his opposition brief, Flowers concedes a number of claims initially filed in his
Complaint, including his claims for injunctions under the Minnesota and Federal Constitutions;
all claims against Appledorn and Christenson in their individual capacities; his Sixth
Amendment claim; his claim for intentional infliction of emotional distress, and his claims
against Minneapolis under state tort law.  Additionally, Flowers has not identified any John Does
at this stage in the litigation.

the summer of 2004.  Flowers Dep. at 72; Stoll Dep. at 249.  During that summer, Flowers

alleges that police squad cars frequently drove by his house.  Flowers Dep. at 70-72.  In July

2004, Flowers claims that five to six squad cars pulled up to his house one day, officers

approached the front door, and asked to enter the house.  Id. at 85.  Flowers refused their request.

Id.  Shortly after this incident, Flowers' sister, a former Minneapolis Police officer, told Flowers

that Stoll lived on the same block as Flowers, and he should beware of Stoll.  Id. at 85-86.

On August 1, 2004, Stoll observed graffiti on some of the garages near the house Flowers

and his family rented.  Stoll Dep. at 165.  This was the first time Stoll had observed graffiti in the

neighborhood in nearly ten years.  Id. at 195.  However, the presence of graffiti had already been

reported to the Minneapolis Police Department.  Peterson Aff. Ex. D.  The day following this

observation, Stoll telephoned Sergeant Donna Olson ("Olson"), the graffiti expert in the

Minneapolis Police Department.  Stoll Dep. at 172-76.  Stoll claims that after describing the

graffiti to Olson, she stated the graffiti sounded like it was gang related.  Id. at 172-76; 219.

Defendant Sherry Appledorn was assigned to examine the graffiti.  Appledorn Dep. (Peterson

Aff. Ex. E) at 15-16.  On August 3, 2004, Appledorn spoke with Stoll.  Stoll told Appledorn that

he believed the graffiti appeared after the current residents of 5800 Knox moved into the

neighborhood.  Id. at 21.  The next day, Appledorn contacted Stoll and told him she had found

gang graffiti.  Id. at 28.  Appledorn informed Stoll that Flowers lived at 5800 Knox Avenue, and

that a woman she believed to be Flowers' niece and also living in the house, was considered to

be a member of the Gangster Disciples.  Id. at 29, 33-38; Stoll Dep. at 205-06.  Appledorn had

concluded this after running CAPRS reports on Flowers and other names contained within those

reports.  Appledorn Dep. at 33-38.  Appledorn also sent Stoll a packet of information on

Flowers. Peterson Aff. Ex. F; Stoll Dep. at 205. She did not, however, file a gang card, nor did the gang unit further investigate the matter. Appledorn Dep. at 23, 44, 60. Following this conversation with Appledorn, Stoll again accessed the CAPRS report on Flowers' September 27, 2003 arrest.

After speaking with Appledorn, on August 4, 2004, Stoll contacted Sergeant David Pleoger ("Pleoger"). Pleoger was the supervisor of the Fifth Precinct, which includes the 5800 block of Knox Avenue. Stoll requested a directed patrol of 5800 Knox Avenue. Stoll Dep. at 214-15. A directed patrol requests officers to patrol the area of the target if time permits. Pleoger sent an email that day ordering the directed patrol, and warning that individuals associated with the address had criminal histories. Clark Aff. [Docket No. 84] Ex. S-2. Additionally, Stoll went to roll call at the Fifth Precinct on August 4, 2004. Stoll Dep. at 230. There, Stoll distributed the packet of information he had received from Appledorn, told the officers of the graffiti near his house, and offered to buy dinner for any officer that made an arrest that led to the conviction or eviction of anyone living at 5800 Knox Avenue. Id. at 230-32.

Starting on August 5, 2004, Flowers' home was placed on directed patrol. Flowers alleges that the police began shining lights on the house when they drove by. Flowers Dep. at 87. Additionally, Flowers claims that the Minneapolis Police broke one of the windows in the house. Id. at 92. Fifth Precinct records indicate Flowers' house was subject to patrol six times between August 5, 2004, and August 27, 2004, for a total of 69 minutes. Peterson Aff. Ex. H. On August 27, 2004, Flowers learned of Stoll's dinner offer to the officers of the Fifth Precinct. Flowers Dep. at 102. Flowers alleges Stoll's offer was motivated by Flowers' decision to fight

4

the charges stemming from the September 27, 2003 incident, and that the Minneapolis Police

Department was harassing him in an attempt to deny him a fair trial on those charges.  Compl.

at 1.

      The only evidence presented involving Erika Christensen in this suit is the statement of

"Witness A," who allegedly was told by Christensen that Flowers and his family were gang

members [Docket No. 12].  The identity of "Witness A" had not been established.

      This lawsuit was filed on August 30, 2004 [Docket No. 1].  In addition to the allegations

addressed here, Flowers sought a temporary restraining order preventing the Minneapolis Police

Department from harassing Flowers [Docket No. 2].  On September 29, 2004, this Court denied

injunctive relief [Docket No. 34].

## III. DISCUSSION

### A.    Standard of Review

      Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion

for summary judgment, the Court views the evidence in the light most favorable to the

nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party

may not "rest on mere allegations or denials, but must demonstrate on the record the existence of

specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Section 1983 Claims**

42 U.S.C. § 1983 imposes "liability for certain actions taken 'under color of' law that deprive a person 'of a right secured by the Constitution and laws of the United States.'"  Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 931 (1982)).  Flowers alleges a number of constitutional violations.

**1.      Equal Protection Claim**

Selective enforcement of the law is prohibited by the Equal Protection Clause.  United States v. Bell, 86 F.3d 820, 823 (8th Cir. 1996).  "A person claiming unequal enforcement of a facially neutral statute must show both that the enforcement had a discriminatory effect, and that the enforcement was motivated by a discriminatory purpose.  To establish discriminatory effect in a race case, the claimant must show people of another race violated the law and the law was not enforced against them.  To show discriminatory purpose, the claimant must show the official's decision to enforce the law was at least partially based on race."  Id.  Here, Flowers claims he was identified as a gang member based on his race or because he was exercising his constitutional right to defend himself.  Compl. ¶ 52.

As a threshold matter, it is not clear what statute or law Flowers believes was selectively enforced against him because of his minority status.  Minn. Stat. § 609.229 defines "gangs" and imposes penalties for those who commit crimes on behalf of a gang.  There is no evidence that this law was applied to Flowers.  Minn. Stat. § 299A.65 formerly set forth criteria for determining whether an individual was a gang member for purposes of establishing a database of

gang members.  However, this law was repealed in 2005.  In any event, no evidence has been presented to suggest that the Minneapolis Police Department ever made an official determination that Flowers was a gang member.  The only evidence on the record regarding gang activity stemmed from the suspected gang graffiti located near Flowers' house and Appledorn's suspicion that a gang member lived at the house.  Although this initially led to suspicion of gang related activity in the neighborhood, and potentially at 5800 Knox Avenue South, no facts have been presented demonstrating an official recognition by the Minneapolis Police Department that Flowers was a gang member.  Appledorn Dep. at 23, 40-41, 44, 60.  Certainly, no evidence has been presented to suggest that a law was unequally enforced on Flowers because he is an African American.  Therefore, Flowers' Equal Protection claim based on race can not survive Defendants' Motions.

Alternatively, Flowers argues he is a "class of one" as defined in <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).  In <u>Olech</u>, the Supreme Court held that "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," a "class of one" suit may be maintained.  <u>Id.</u>  Flowers argues that, unlike others attempting to defend themselves on state charges, he was harassed by the Minneapolis Police Department on this basis.  Although there is evidence that the Minneapolis Police Department in August 2004 placed Flowers' house on directed patrol, no evidence has been presented to suggest that this attention was the result of animosity towards Flowers for defending himself on state criminal charges.  The record reflects that the directed patrol was the direct result of Stoll's investigation into perceived gang graffiti in the area of Flowers' home.  Although the timing of the directed patrol occurred the month before

Flowers' state criminal trial, no facts indicate that the directed patrol was related to the trial. Therefore, because Flowers has not proffered any facts that lead to an inference that the directed patrol was causally connected to his state criminal trial, his "class of one" Equal Protection claim fails.

###     2.        Substantive Due Process Claim

"To establish a legally cognizable substantive due process claim under § 1983, [plaintiff] must identify an arbitrary abuse of executive power that 'shocks the conscience.'" Terrell v. Larson, 396 F.3d 975, 982 (8th Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).  Although negligent behavior is never sufficient to shock the conscience, intentional conduct to injure generally will rise to that level.  Id.  In between these extremes lies a gray area which may or may not shock the conscience.  "*In situations where actual deliberation by an officer is practical, conduct that is deliberately indifferent may shock the conscience.*"  Id. (emphasis in original).

Flowers relies on undisputed facts to avoid summary disposition of this count.  These facts include: on two occasions, Stoll accessed the CAPRS report on Flowers' arrest in September 2003; in August 2004, Stoll asked Sergeant Olson to examine graffiti in his neighborhood; Stoll requested the Fifth Precinct to put Flowers' residence on directed patrol; Stoll offered to buy dinner for any officer who performed an arrest that led to the conviction or eviction of the tenants at 5800 Knox Avenue South; and Stoll distributed information on Flowers to the officers in the Fifth Precinct.  Examining these facts in a light most favorable to Flowers, a jury could conclude from these facts that Stoll's actions were sufficiently conscience shocking to impose liability, particularly given that Stoll's opportunity for actual deliberation before using

8

police resources to address matters outside of his own responsibilities in the First Precinct. Therefore, as held in Terrell, deliberate indifference could be sufficient for a jury to find conscience shocking behavior.  Id.

Although Stoll argues he is subject to qualified immunity on this count, Flowers has presented sufficient facts for a jury to conclude otherwise.  "Qualified immunity shields government officials from liability in civil lawsuits when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" K.D. v. County of Crow Wing, No. 05-2499, 2006 WL 119876, at *3 (8th Cir. Jan. 18, 2006) (citation omitted).  Here, Flowers has proffered facts which might lead to a conclusion by a jury that his substantive due process rights were violated.  Additionally, the same facts could allow a finding by a jury that the actions taken by Stoll were, in the eyes of a reasonable officer, unlawful.  Saucier v. Katz, 533 U.S. 194, 202 (2001).  The instant case is distinguishable from many police conduct substantive due process cases in that Stoll did not make a decision in a fluid and fast-moving scenario, but he had adequate time for deliberation.  Thus, a jury could conclude that a reasonable officer in Stoll's position would have deemed his actions to violate Flowers' substantive due process rights.  Consequently, Stoll's Motion is denied on this count.

### 3.     Procedural Due Process Claim

To state a procedural due process claim, a plaintiff must allege the government deprived him of an interest in life, liberty or property without sufficient process.  Singleton v. Cecil, 176 F.3d 419, 424 (8th Cir. 1999).  Procedural due process rights can be created by the Constitution or state law.  Id.  Here, Flowers alleges he was harassed because he attempted to exercise his constitutional rights to defend himself in a criminal trial and complain about government actions.

Compl. ¶ 52.  Flowers has not identified by way of evidence, however, any actual deprivation of a life, liberty, or property right.  It is undisputed that Flowers was able to hire an attorney and defend himself in the state court action–in fact, he did so successfully.  Moreover, Flowers has not identified any deprivation of a right created by state law.  As a result, Flowers' procedural due process claim must fail.

### 4.      Access to Courts/Retaliation Claim

The right to access courts "applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant."  Scheeler v. City of St. Cloud, 402 F.3d 826, 830 (8th Cir. 2005).  The constitutional underpinnings of the right of access to courts is not settled.  In some instances, the First Amendment has served as the basis for the right.  In that case, one "must show that the defendants acted with some intentional motivation to restrict [plaintiff's] access to the courts."  Id.  In other instances, the source of the right of access to the courts has been found in the Due Process Clause.  Then, a claim may be demonstrated when a plaintiff "show[s] that the defendants displayed a deliberate indifference to their right to access the courts."  Id. at 831. Additionally, a plaintiff claiming denial of access to courts must demonstrate an actual injury. Lewis v. Casey, 518 U.S. 343, 349 (1996).  To demonstrate a retaliation claim, a plaintiff must show (1) he engaged in a protected activity; (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity. Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004).

Although Flowers alleges that harassment by the Minneapolis Police Department restricted his access to the courts in attempting to defend himself against state criminal charges, no evidence supports this claim.  The undisputed facts demonstrate that Flowers was able to hire an attorney and successfully defend himself in the state court action.  Therefore, even if Flowers was able to demonstrate that the Minneapolis Police Department attempted to deny him access to the courts, his claim must fail because he has suffered no actual injury as a result of state action. Finally, Flowers retaliation claim must fail for the same reasons.  Even assuming Flowers participated in a protected activity, he can not demonstrate causation, as no evidence has been presented that he was prevented from exercising his right to defend himself in court.  Therefore, judgment is entered for Defendants.

**5.    Failure to Protect Claim**

As a general matter, failure to protect claims arise under the Due Process Clause. Generally, these claims have been applied to persons who have been deprived of their liberty by the state, such as prisoners, pre-trial detainees, or others held in confinement.  Collins v. City of Harker Heights, 503 U.S. 115, 127 (1992).  A claim made by a person not held in custody that the state or state agents failed to protect an individual has been found to be equivalent to a substantive due process violation.  Id. at 127-28.  Therefore, the analysis and result under this claim is identical to that of Flowers' substantive due process claim.

**6.    Monell Claim**

Finally, Flowers brings a Monell claim against Minneapolis.  As a general matter, municipalities are not subject to respondeat superior or vicarious liability under § 1983.  Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658, 694 (1978).  However, a

municipality can be held liable for its own wrongs when the enforcement of a policy or practice of the municipality results in the deprivation of federally protected rights.  Id. at 694.  To demonstrate Minneapolis' liability under a Monell claim, the Plaintiff must show that a policy or custom of Minneapolis was the "moving force [behind] the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citation omitted).  Additionally, "[a]n unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business." Angarita v. St. Louis County, 981 F.2d 1537, 1546 (8th Cir. 1992).

Flowers argues the Minneapolis Police Department has several policies or customs in place which deprived Flowers' of his constitutional rights.  Among these are the alleged policy of allowing police officers to list an individual as a gang member without following proper procedure, and allowing police to violate the constitutional rights of members of the public. Compl. ¶¶ 54-58.  Although a jury may find that Flowers' substantive due process rights were violated, Flowers has not presented any evidence of a policy or custom that allowed Flowers' substantive due process rights to be violated.  As previously discussed, although the Minneapolis Police Department harbored suspicions that gang members or activity may have been occurring at 5800 Knox Avenue South, Flowers was never placed on a list of gang members.  Therefore, his case can not serve as evidence that a policy or custom exists wherein Minneapolis police officers are allowed to list individuals as gang members without following proper procedures. Nor has Flowers presented evidence of a policy or custom which allows police officers to violate citizens' constitutional rights.

Finally, Flowers advances the theory that evidence of a policy or custom of the Minneapolis Police Department can be inferred by the actions of Stoll because of his rank within the department.  In Angarita, the Eighth Circuit made clear that a policy or custom can be established by one individual when that individual has final policy making authority for a department.  981 F.3d at 1547.  Here, no evidence exists that suggests that Stoll had such authority.  Although his efforts may have secured the directed patrol on Flowers' residence, the power to influence a directed patrol does not equate to final policy making authority for the Minneapolis Police Department.  Thus, because Flowers has not presented evidence of a policy or custom of the Minneapolis Police Department that resulted in a constitutional violation, judgment is entered for Minneapolis on this claim.

**C.      Section 1981 Claim**

"All persons within the jurisdiction of the United States shall have . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981.  Therefore, to demonstrate a violation of § 1981, one must

"show that the officers' actions were racially motivated by purposeful discrimination."  Buffkins v. City of Omaha, Douglas County, Neb., 922 F.2d 465, 468 (8th Cir. 1990).

As discussed in Flowers' Equal Protection claim, no evidence has been presented demonstrating that race was a factor in the actions taken by the Minneapolis Police.  The analysis set forth in determining that the Equal Protection claim fails applies with equal force to Flowers' § 1981 claim.  Consequently, because Flowers can not present any evidence to prove

his allegation that he was identified as a gang member solely based upon his race, judgment is

entered for Defendants on this count.

**D.    State Tort Claims**

**1.    Defamation**

In Minnesota, proof of a defamation claim is premised on proof of the following

elements: (1) a false statement; (2) communication to a third party; and (3) resulting harm to the

claimant's reputation in the community.  Dunham v. Roer, No. A05-421, 2006 WL 44312, at *13

(Minn. Ct. App. Jan. 10, 2006) (citing Weinberger v. Maplewood Review, 668 N.W.2d 667, 673

(Minn. 2003)).  Certain statements are conditionally privileged and therefore immune from suit.

"The law is that a communication, to be privileged, must be made upon a proper occasion, from

a proper motive, and must be based upon reasonable or probable cause. When so made in good

faith, the law does not imply malice from the communication itself, as in the ordinary case of

libel. Actual malice must be proved, before there can be a recovery, and in the absence of such

proof the plaintiff cannot recover."  Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 256-57

(Minn. 1980).

In his Complaint, Flowers alleges that Defendants disseminated false statements about

him to his neighbors, a Minneapolis City Council member, and the Minneapolis Police

Department.  Compl. ¶ 65.  The alleged statements include the allegation that Flowers and his

daughter were gang members.  Id.  The task of analyzing this claim is made more difficult by the

lack of specificity in Flowers' Complaint as to the precise statements Flowers alleges to be

defamatory.  In his opposition memorandum, Flowers identifies an email from Sergeant Pleoger

to a group of police officers.  Clark Aff. Ex. S-2.  The email asks that 5800 Knox Avenue South

14

be put on directed patrol.  Id.  It also states: "Lt Stoll resides at 5836 Knox Av. S. and would

appreciate any extra patrol we can give this area.  Since these parties have moved into the

address neighbors are finding gang graffiti in the alleys nearby and an increase in late night

traffic . . . to the area.  Some of these parties and their associates have lengthy and violent

criminal histories and have had multiple contacts with the police."  Id.

     This email, however, is not sufficiently specific to constitute defamation.  "Language

which is vague and cannot be said to refer to a particular person is not actionable."  Stock v.

Heiner, 696 F.Supp. 1253, 1259 (D. Minn. 1988) (citing Petsch v. St. Paul Dispatch Printing Co.,

41 N.W. 1034 (Minn. 1889)).  The email does not specifically name Flowers.  Additionally, the

allegation that some of the persons associated with 5800 Knox Avenue South have lengthy and

violent criminal histories does not specifically address Flowers.  Without drawing additional

inferences not warranted by the facts, one can not read the email at issue and conclude that

Flowers is the individual being addressed.  As a result, his defamation action can not survive.

     Even if the email cited by Flowers were defamatory, it was made with a proper purpose.

When made, there was cause to believe gang activity was occurring in the neighborhood based

on the recent appearance of graffiti.  Although the graffiti later proved to be non-gang related,

the motive in publishing the email was proper.  Therefore, the email is conditionally privileged

and is not the basis for a defamation action.

    **2.**    **Negligent Infliction of Emotional Distress**

     Finally, Flowers brings a negligent infliction of emotional distress claim against Stoll.

Under Minnesota law, a case of negligent  infliction of emotional distress must be proved

through three distinct elements: (1) the plaintiff was within a zone of danger of physical impact;

15

(2) the plaintiff reasonably feared for his own safety; and (3) the plaintiff suffered severe emotional distress with attendant physical manifestations.  Stead-Bowers v. Langley, 636 N.W.2d 334, 343 (Minn. Ct. App. 2001) (citing K.A.C. v. Benson, 527 N.W.2d 552, 557 (Minn. 1995)).  If a plaintiff can not demonstrate he was within the "zone of danger," this element may be filled by demonstrating that the plaintiff was the victim of malicious prosecution, defamation, or other willful, wanton, or malicious conduct.  Id. (citing Schibursky v. IBM, 820 F. Supp. 1169, 1184 (D. Minn. 1993)).

Flowers' negligent infliction of emotional distress claim fails because Flowers has not provided evidence demonstrating any physical symptoms that were a result of the alleged emotional distress.  Moreover, he has failed to demonstrate that he was the victim of defamation or other willful, wanton, or malicious conduct.  As a result, his negligent infliction of emotion distress claim can not survive Defendants' Motions.

## IV. CONCLUSION

For the reasons stated on the record, and based on all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendants City of Minneapolis, Sherry Appledorn, and Erika Christensen's Motion for Summary Judgment [Docket No. 52] is **GRANTED**; and

2.  Defendant Kevin Stoll's Motion for Summary Judgment [Docket No. 45] is **GRANTED** in part and is **DENIED** in part.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 22, 2006.